UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT S. BETTIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:13-CV-01623-CL |
| | ) | |
| v. | ) | **FINDINGS AND RECOMMENDATION** |
| | ) | |
| CAROLYN L. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Alan Stuart Graf, P.C., 208 Pine Street, Floyd, VA 24091. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Brett E. Eckelberg, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Robert Bettis ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision should be **AFFIRMED**.

## BACKGROUND

Born in 1955, plaintiff was 54 years old on the alleged disability onset date of December 23, 2009. Tr. 173-74. He speaks English and has a long successful work history in web design and acting. Tr. 175. Plaintiff filed an application for DIB on April 9, 2010, alleging disability due to neuropathy and an L5-S1 nerve root impingement. Tr. 20, 156-59, 173-74.

The Commissioner denied plaintiff's application for DIB initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 20, 96. After an administrative hearing, held on June 27, 2012, ALJ Richard Say issued a decision finding plaintiff not to be disabled. Tr. 17-26, 31. Plaintiff filed a timely appeal and submitted new MRI evidence to the Appeals Council. Tr. 16. The Appeals Council denied plaintiff's request for review on July 31, 2013, making the ALJ's decision the final Agency decision. Tr. 1-2; 20 C.F.R. § 422.210 (2014). This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

    1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or

Page 2 – FINDINGS AND RECOMMENDATION

physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing
"work which exists in the national economy"). If the Commissioner fails to meet this burden, the
claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that
the claimant is able to perform other work existing in significant numbers in the national
economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at
1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not
engaged in substantial gainful activity during the period from his alleged onset date of December
23, 2009, through his date last insured of June 30, 2011. Tr. 22. At step two, the ALJ found that
plaintiff's degenerative disc disease was a severe impairment. *Id.* At step three, the ALJ found
that plaintiff's impairments did not meet or medically equal a listed impairment. *Id.*

The ALJ next assessed plaintiff's RFC and determined that through his date last insured,
plaintiff retained the ability to lift and carry 10 pounds frequently and 20 pounds occasionally; to
stand or walk up to four hours out of an eight hour workday and sit without restriction; to
occasionally climb, balance, stoop, kneel, crouch, and crawl; and that he must avoid concentrated
exposure to vibration. Tr. 23.

At step four, the ALJ found that plaintiff was capable of performing his past relevant work as a web designer, as the work is generally performed. Tr. 26. Accordingly, the ALJ concluded that plaintiff was not disabled at any time during the relevant period. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting his credibility; (2) failing to include his obesity as a severe impairment at step two; (3) finding at step four that he was capable of performing his past relevant work; (4) failing to consider new evidence submitted to the Appeals Council; and (5) rejecting lay evidence of memory and concentration problems. For the reasons discussed below, the ALJ's opinion should be affirmed.

**Plaintiff's Credibility**

Plaintiff first argues that the ALJ erred by rejecting his credibility. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations.   *Smolen*, 80 F.3d

at 1284.   The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms . . . other testimony by the claimant that appears less than

candid [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment." *Smolen*, 80 F.3d at 1284.   The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not

substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the hearing before the ALJ, plaintiff testified that he can do some work at home, but

that his endurance is limited because of back pain. Tr. 40-41.   At the time of the hearing, he was

not receiving treatment because he did not have health insurance. *Id.*   He testified that he is

unable to seek treatment from the free clinic because his back pain prevents him from standing in

line. *Id.* He stated that because of his pain and discomfort, he was unable to handle the stress of performing on stage or to concentrate enough to work in web development. Tr. 23. He also testified that physical therapy did not make a significant impact on his pain, or on his ability to move or perform. Tr. 44. Plaintiff can sit in a chair for one to two hours before needing a break. *Id.* On a good day, he can walk his dog for 15 minutes, do laundry for 20 to 30 minutes, and do dishes for 15 to 20 minutes; on a bad day, "there's pretty much nothing that's done." Tr. 43.

The ALJ considered plaintiff's testimony in light of the entire record and concluded that he was only partially credible. Tr. 22-25. First, the ALJ found that plaintiff's condition improved with treatment. *Id.* Impairments that can be controlled with treatment are not disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, for example, treating physician Ahmed Ebeid, M.D., found in May, 2010 that plaintiff's pain and sleeping habits improved with treatment from Gabapentin. Tr. 364. Dr. Ebeid opined that plaintiff's "pain appears to be under control at this point." *Id.* He also noted improvement in plaintiff's range of motion in the lumbar spine, with minimal residual tenderness. *Id.* Dr. Ebeid concluded that plaintiff would need only "follow-up in the pain clinic on an as needed basis or if the pain worsens." Tr. 364, 369. Thus, plaintiff's testimony that he was disabled by pain was contradicted by record evidence that his pain was controlled with treatment. The ALJ properly considered this evidence in his adverse credibility determination. *Smolen,* 80 F.3d at 1284.

Second, the ALJ found that plaintiff's testimony was contradicted by reports of his activities of daily living. A claimant's activities of daily living can support an adverse credibility finding when they are inconsistent with the claimant's statements about his limitations. *Orn,* 495 F.3d at 639; *Burch,* 400 F.3d at 680-81 (a claimant's activities of daily living are a relevant credibility consideration). "Even where [a claimant's] activities suggest some difficulty

Page 8 – FINDINGS AND RECOMMENDATION

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, the ALJ considered plaintiff's ability to do household chores, walk the dog, do laundry, cook simple meals, use the computer for "some web design" and to play video games, and found that these activities were inconsistent with plaintiff's allegations that he could not perform work as a web designer.[1] Tr. 23-25, 39-41, 195-210. The Court also notes that plaintiff testified that he had ceased to do web design because he had "no one to design web[sites] for any longer," not because of his disability. Tr. 40. The ALJ reasonably found that plaintiff's level of daily activity undermined plaintiff's claim that he was precluded from working by his symptoms and limitations. *Orn*, 495 F.3d at 639.

Third, the ALJ found plaintiff's testimony was contradicted by the medical evidence. A conflict with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ gave significant weight to the opinions of Dr. Ebeid, examining physician Tamara Atkinson, M.D., and Rick Eikrom, M.D. who all assessed plaintiff's functional abilities in contrast to his testimony that he was precluded from all work. Tr. 61-69, 72-84, 354-59, 364, 381-82. For example, in contrast with plaintiff's testimony that he could not sit for more than 1 to 2 hours at a time, Dr. Atkinson found that plaintiff's ability to sit during an 8-hour workday was not restricted. Tr. 358. Plaintiff does not contest the ALJ's acceptance of this finding. The ALJ therefore provided a clear and convincing for rejecting plaintiff's testimony, because it conflicted with multiple medical sources in the record. *Carmickle*, 533 F.3d at 1161. In sum, the ALJ

---

[1] The Court also notes that plaintiff's daily activities are significantly more demanding than those of the claimant in *Garrison v. Colvin*, which plaintiff cites in his argument in reply. *See* Pl.'s R. Br. 6-7, citing 2014 WL 3397218 (9th Cir. July 14, 2014) at *17.

provided clear and convincing reason for rejecting plaintiff's testimony. *Orn*, 495 F.3d at 639. The ALJ's credibility evaluation should be affirmed.

**Step Two Findings**

Plaintiff next argues that the ALJ failed to recognize his obesity as a severe impairment at step two. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 404.1520(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

At step two, the ALJ found plaintiff had the severe impairment of degenerative disc disease. Tr. 22. At the hearing, the ALJ took testimony regarding plaintiff's height and weight. Tr. 38-39. The ALJ also gave significant weight to the opinion of examining physician Dr. Atkinson, who also noted plaintiff's weight in assessing his functional abilities. Tr. 25, 356, 358-59. Dr. Atkinson's assessment of plaintiff's limitations was incorporated into the RFC. On this record, the ALJ's omission at step two did not cause error, because the ALJ's subsequent RFC evaluation incorporated the credible medical evidence of his limitations as compounded by obesity. *Lewis*, 498 F.3d at 911.

**Step Four Findings**

Plaintiff next argues that the ALJ erred at step four by finding that he could perform his past relevant work as a web designer. At step four of the sequential analysis, the ALJ determines whether the claimant can perform his "past relevant work" given his RFC assessment. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined at step four that plaintiff could perform the job

of web designer as generally performed.[2]   Tr. 26.   This finding was based upon the VE's testimony that the web designer job required "sedentary, skilled work that does not require the performance of tasks precluded by [plaintiff's] residual functional capacity." Tr. 26, 49-58. The ALJ thus based his step four finding on the VE's testimony that plaintiff retained the ability to perform work as a web designer. Tr. 50-51. The ALJ was entitled to rely upon this testimony, and his step four finding was therefore supported by substantial evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (the Regulations recognize vocational experts as authoritative).

Plaintiff also argues that the ALJ failed to make specific findings regarding the physical and mental demands of his past job. Pl.'s Br. 5. The Court disagrees; in the Ninth Circuit, the ALJ is entitled to rely solely on the VE's testimony and was therefore not required to make additional, specific findings regarding the physical and mental demands of plaintiff's past work. *Johnson*, 60 F.3d at 1435.

Plaintiff also contends that the ALJ erred as a matter of law because "the task of web designer was the least demanding function of a myriad of tasks performed by Plaintiff" in his past relevant work. Pl.'s R. Br. 2. He cites *Valencia v. Heckler* for the proposition that it is error for the ALJ to characterize an applicant's past relevant work according to the least demanding function of the claimant's past occupation. *Id.*; 751 F.2d 1082, 1086 (9th Cir. 1985).

In *Valencia*, the Ninth Circuit held that it was error for the ALJ to characterize the claimant's past relevant work according to the task of sorting tomatoes, when she was in fact previously employed as an agricultural worker. The *Valencia* court held that, because the

---

[2] Because the ALJ's determination related to the web designer job as generally performed, plaintiff's argument that the ALJ failed to consider the demands of his past work as actually performed is moot.

Page 11 – FINDINGS AND RECOMMENDATION

claimant also performed "other tasks customarily performed by agricultural workers" in her past

relevant work, it was error for the ALJ to classify her past work as involving only the task of

sorting tomatoes. *Id.* at 1086.

*Valencia* is distinguished from this case. Here, plaintiff alleges that his past work as a

web designer involved tasks that required lifting up to 50 pounds. Lifting 50 pounds, however,

is not a task "customarily performed by" web designers. Web design is a skilled occupation that

involves several demanding functions; the ability to lift 50 pounds is not a customary component

of those functions. At the hearing, the VE characterized the job of web designer as generally

performed and testified that a claimant with plaintiff's RFC could perform that job. The ALJ

was entitled to rely upon the VE's testimony in his step four findings. *Johnson*, 60 F.3d at 1435.

It was therefore reasonable for the ALJ to find that plaintiff could perform his past relevant work

as a web designer as it was generally performed. The ALJ did not err at step four and his

decision should be affirmed.

**New Evidence**

Plaintiff argues, further, that the ALJ's decision is not supported by substantial evidence

in light of new evidence submitted to the Appeals Council. In the Ninth Circuit, where the

claimant submits evidence after the ALJ's decision and the AC specifically considers that

evidence, the Court must "consider the rulings of both the ALJ and the AC, and the record for

review includes the new evidence." *Grey v. Barnhart*, 123 Fed.Appx. 778, 780 n.1, citing

*Ramirez v. Shalala*, 8 F.3d 1449, 1451–52 (9th Cir. 1993).

The AC acknowledged its receipt of new evidence on July 31, 2013. Tr. 1-3, 5. The AC

incorporated some of this evidence into the record, but ultimately found that the additional

information did not provide a basis for changing the ALJ's decision. Tr. 2. The AC also looked

at MRI evidence submitted by plaintiff, but found that because the evidence was dated at a time later than the period under review, it did not affect the ALJ's decision. Tr. 2. Plaintiff contests this finding, and the Commissioner argues that the MRI evidence should be stricken from the record.

The additional evidence includes a 2013 MRI of the L5-S1 area of plaintiff's lumbar spine, showing signs of interval progression. Plaintiff argues that the new evidence undermines the ALJ's determination that his condition improved after the November 2009 MRI. Tr. 24. The Court disagrees. The ALJ's decision considered MRI evidence and noted lumbar spine degenerative changes at the L5-S1 region. Tr. 23. While the 2013 MRI revealed mild-moderate focal right neural foraminal stenosis that was not present in 2009, the radiologist who performed the 2013 MRI notes that the new imaging is "similar in appearance to the prior [2009] study." Pl.'s Br. at A-1. In fact, the 2013 radiologist rated the condition of plaintiff's right neural foramen at L5-S1 as better than the 2009 study. *Compare* Tr. 24, 328, *with* Pl.'s Br. at A-1 (noting "mild-moderate focal point right neural foraminal stenosis" in the 2013 MRI). Further, there was only a slight progression of plaintiff's disc-bulge protrusion noted in the time between the 2009 and 2013 MRIs. Pl.'s Br. at A-1. On this record, the Court finds that even if the new evidence were incorporated into the record, it does not undermine the ALJ's conclusion that plaintiff was not disabled during the relevant period. Thus, even if the AC's decision to forego review of the additional evidence was error, it was inconsequential to the ultimate disability determination and therefore harmless. *Molina*, 674 F.3d at 1115 (an ALJ's error may be harmless if it has no effect on the ultimate non-disability determination).

**Lay Testimony Regarding Memory and Concentration Limitations**

Plaintiff argues, finally, that the ALJ improperly ignored the lay testimony regarding his concentration and memory problems. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

In his written decision, the ALJ summarized evidence of memory and concentration limitations described by plaintiff's wife Penny Bettis and plaintiff's former employer Chuck Neighbors. Tr. 25. Mrs. Bettis wrote that plaintiff had difficulty concentrating, and testified that he sometimes "loses track of what he's doing" due to attention and concentration difficulties. Tr. 48, 200. Mr. Neighbors wrote a letter dated April 16, 2012, describing instances when plaintiff had difficulty recalling instructions, remembering lines during public performances, and concentrating while working on a computer. Tr. 258.

The ALJ rejected the lay evidence of plaintiff's memory and concentration problems, and provided germane reasons for doing so. Tr. 25. First, the ALJ found that the lay testimony regarding plaintiff's concentration and memory was inconsistent with the medical evidence. *Id.* Conflict with the medical evidence is a germane reason for rejecting lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Specifically, the ALJ discussed a summary of plaintiff's 2010 mental status examination written by Dr. Atkinson, as well as a 2011 mental status examination performed by Dr. Eikrom. Tr. 25, 356, 381-82. Both Drs. Atkinson and Eikrom found plaintiff to have normal mental function. Tr. 25. Dr. Atkinson found plaintiff had normal memory, concentration, and attention span, and was able to follow simple and complex commands. Tr. 356. Similarly, Dr. Eikrom made normal findings from plaintiff's mental status

Page 14 – FINDINGS AND RECOMMENDATION

exam, after plaintiff complained of mild memory loss.  Tr. 381.  On this record, the ALJ

provided a germane reason for rejecting the lay testimony, because it was inconsistent with the

medical evidence of plaintiff's mental functioning.  *Bayliss*, 427 F.3d at 1218.

Second, the ALJ found that the lay testimony was inconsistent with the evidence of

plaintiff's daily activities.  Tr. 24, 25.  Inconsistency with a claimant's daily activities is a

germane reason for rejecting lay testimony.  *See Lewis,* 236 F.3d at 511.  For example, plaintiff's

ability to work on the computer, read, watch movies, and play video games arguably

contradicted the testimony regarding the severity of his concentration problems.  Tr. 25, 199.

Further, in describing plaintiff's daily activities, Mrs. Bettis wrote that plaintiff's attention span

"does not seem to be much of an issue," and that he follows written and spoken instructions

"very well."  Tr. 200.  On this record, the level of cognitive functioning implicated in plaintiff's

activities of daily living provides a second germane reason for rejecting the lay testimony of Mrs.

Bettis and Mr. Neighbors.  *Lewis,* 236 F.3d at 511.  The ALJ thus provided legally sufficient

reasons for rejecting the lay testimony regarding the nature and severity of plaintiff's

concentration and memory problems.  The ALJ's rejection of the lay testimony should be

affirmed.

**Due Process Rights**

Plaintiff argues, finally, that the ALJ violated his due process rights by voicing concern

about cumulative evidence at the hearing during Mrs. Bettis's testimony.  Upon reviewing the

transcript, the Court finds that the ALJ did not improperly restrict the testimony, and allowed

plaintiff's attorney to question Mrs. Bettis.  *See* Tr. 46-49.  On this record, the ALJ did not

unduly restrict plaintiff's ability to present evidence during the hearing, and the Court can find

no error in the ALJ's hearing conduct.  *Id.*  The ALJ's decision should be affirmed.

Page 15 – FINDINGS AND RECOMMENDATION

## RECOMMENDATION

The ALJ's conclusion that plaintiff was not disabled during the relevant period is supported by substantial evidence and should therefore be AFFIRMED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this ___ day of November, 2014.

MARK D. CLARKE
United States Magistrate Judge